MESEROLE v. BOARD OF ADJUSTMENT, CITY OF DALLAS, et al.

No. 13397.

Court of Civil Appeals of Texas. Dallas.

April 30, 1943.

Rehearing Denied May 28, 1943.

Wm. Andress, Jr. and Chas. S. McCombs, both of Dallas, for appellant.

H. P. Kucera, City Atty., and R. L. Dillard, Jr., and A. J. Thuss, Asst. City Attys., all of Dallas, for appellees.

BOND, Chief Justice.

This is an appeal from a judgment of a district court of Dallas County, Texas, refusing appellant a building occupancy permit under the zoning ordinance of the City of Dallas.

Appellant applied to the City building inspector for a permit to occupy and use as a laundry call station, a small building facing University Boulevard. This permit was first denied by the building inspector because of the location of the building in a zoned residential district, hence such business use would be detrimental to the public welfare; also for the protection and proper safeguarding of the neighborhood and locality in the matter of proper zoning. Appellant then exercised an appeal to the Zoning Board of Adjustment, based solely upon the ground that the use of the building was a nonconforming use, or one in existence at the time the City's Zoning ordinance became effective. On hearing, the Board of Adjustment refused to issue the occupancy permit, largely upon the conclusion that appellant had not matured the nonconforming use, and that the use of the building as a laundry call station would not be for the best interest of the public welfare and, further, would be in violation of the zoning ordinance of the City. Thereafter, appellant appealed by writ of certiorari to the district court, seeking an injunction restraining the City authorities from interfering with the use of his building as a laundry and dry cleaning call station, and ordering the City to issue the certificate of occupancy. On trial before the court, the judgment of the Board of Adjustment was sustained, appellant adjudged to take nothing, and the injunctive relief denied, from which, this appeal is prosecuted.

The Legislature, Art. 1175, R.C.S., granted to cities such as Dallas the right to exercise local powers of self-government, free and independent of further legislative grants; to fix by ordinance the boundary limits of such cities; to annex additional territory lying adjacent to the existing boundary, and to adopt such rules and regulations as may be prescribed by charters and ordinances of said cities. By virtue of the powers thus granted, the charter of the City of Dallas, relating to territory adjoining the City's boundary, provides that such territory shall be annexed to the City and that thereafter the inhabitants of same shall in all respects be on an equal footing with those of the original municipal territory.

■ Articles 1011a to 1011f, Vernon's Ann.Civ.St., authorize a special charter city to divide the municipality into zoning districts of such number, shape and area as best suited to promote the health, safety, morals and general welfare of the community, and to regulate and restrict construction and use of buildings within such districts. Accordingly, the City of Dallas passed comprehensive zoning ordinances, dividing the City into zones for residential and business purposes, and declaring that, except as provided in the ordinance, no business institution shall be permitted in a dwelling district, with certain exceptions such as telephone exchanges, water supply features, passenger stations, farms, nurseries, greenhouses and the like; and on August 21, 1941, for purposes designated in the comprehensive zoning plan, the City Commission passed a temporary or emergency zoning ordinance affecting all areas newly annexed to the City, including the property in question, effective only until a permanent zoning regulation could be promulgated having the effect of promoting the health, safety, morals and general welfare of the City, and providing a uniform method of issuance of permits in all such newly annexed territory in order to protect and properly safeguard the various neighborhoods and localities in proper zoning and having due regard to the public welfare and comfort pending permanent zoning. This emergency or interim ordinance evidences reasonable regulations to effectuate the purposes of the comprehensive zoning ordinance then in effect. Then, on February 18, 1942, the City passed the contemplated permanent zoning ordinance, amending the 1941 Code of Civil and Criminal Ordinances of the City, dealing with and establishing regulations and districts in accordance with the comprehensive plan, regulating buildings and uses thereof in all areas annexed, specially designating the area in which the building herein involved is lo-

cated as a "Dwelling A Area," and prohibiting construction of buildings and the use thereof for business purposes, except as permitted by the zoning ordinance. The purpose of the ordinance, reflected therein, was to place this area under the same comprehensive zoning restrictions as apply to like territory within the City.

The zoning restrictions, relative to "Dwelling A Areas," at the time of passage of the above ordinance, provide: "Any use of property existing on September 11, 1929, that does not conform to the regulation prescribed in the preceding articles of this chapter shall be deemed a nonconforming use. A nonconforming use may be continued subject to such regulations as to the maintenance of premises and conditions of operation as may, in the judgment of the Board of Adjustment, be reasonably required for the protection of adjacent property. A nonconforming use shall not be extended but the extension of a use to any portion of a building which portion was arranged or designed for such nonconforming use on September 11, 1929, shall not be deemed the extension of a nonconforming use." It will be observed that enforcement of zoning by express terms of City ordinances devolves upon the building inspector, and by statute, Art. 1011g, the Board of Adjustment is empowered "To hear and decide appeals where it is alleged there is error in any order, requirement, decision, or determination made by an administrative official in the enforcement of this Act or of any ordinance adopted pursuant thereto."

Appellant contends that his right to the occupancy permit attached prior to annexation of the area in which his building is located; that the building was designed and constructed for business use, and in contemplation, as a laundry call station; hence a nonconforming use was established prior to the annexation; thus, the ordinance could not retroactively destroy his right to the permit.

■ Appellant having alleged in his petition for certiorari that the City building inspector had refused the occupancy permit, and thereafter, on appeal, the Board of Adjustment having refused the permit, it must be assumed that the inspector and the Board each reached the conclusion on evidence that, as a matter of law and fact, no nonconforming use of the building existed at the time the zoning ordinance affecting the property was passed. Obviously, the trial court reached the same

conclusion, expressly holding that "The building in question is not a lawful nonconforming use as a laundry call station as defined by the zoning ordinances of the City of Dallas, and therefore the relief sought by plaintiff should be denied." The conclusion must also be held to be based on evidence, absent proof to the contrary.

Briefly reviewed, the record shows that the building in question was begun on June 5, 1941, and completed about June 27, 1941 (prior to zoning of the area); it was designed for small business or store and, at the time of its construction and at various times since, Meserole had negotiation with a Mr. Gilliland to rent or lease the building for a laundry call station. Mr. Meserole had never occupied the building, nor intended to personally use same for business. His only hope was to lease it to Mr. Gilliland as a laundry call station, provided he could secure an occupancy permit for that purpose. It is conceded the building is located in an area zoned for residences and there is evidence that same could easily, and with little expense, be moved to the rear of the lot and used as a garage for a residence; that it is utterly inconsistent with the design and plan of development of that area, and highly detrimental to adjoining property if used as a business or laundry call station.

■ Appellant seemingly recognized the validity of the annexation and the zoning ordinance affecting his property; he made application for the permit in the form and manner required by the ordinance, and submitted his cause to the City tribunals delegated by statute to hear such matters. The power of the City to exclude business enterprise from residential districts is a valid exercise of the police power in the interest of public health, morals, convenience and general welfare. Lombardo v. City of Dallas, 124 Tex. 1, 73 S.W.2d 475; Connor v. City of University Park, Tex.Civ.App., 142 S.W.2d 706, writ refused; City of University Park v. Hoblitzelle, Tex.Civ.App., 150 S.W.2d 169; City of Dallas v. Meserole Bros., Tex.Civ.App., 164 S.W.2d 564; Washington v. City of Dallas, Tex.Civ.App., 159 S.W.2d 579.

■ Therefore, the building not having been committed to a nonconforming use at the time the application for an occupancy permit was made, the City authorities, in the exercise of their police power, had the right to deny such use. In City of Dallas v. Meserole Bros., supra [164 S.W.2d 569],

this Court, speaking through Justice Looney, said: "However, even if Meserole had offered evidence tending to show that the location of commercial buildings in the residential area would not have harmed or jeopardized public health, morals, safety or general welfare, yet, in view of the record disclosures, the trial court was not justified in substituting its judgment for that of the City Council. * * * In areas entirely residential, the doctrine is recognized that, as a matter of law, the exclusion of businesses is a valid exercise of the police power." So, also, was the holding of this Court, speaking through Justice Young, in Washington v. City of Dallas, supra [159 S.W.2d 580]: "A claim to a nonconforming use under zoning ordinances is uniformly determinable by appeal to a Board of Adjustment from an order of the Building Inspector (or similar administrative official), and then by certiorari to the courts. (Citing authorities). Appellant could have directly sought relief in the district court from adverse rulings of this Board of Appeals, Art. 1011g, Vernon's Ann.Civ.St., but this he failed to do. It would follow, we think, that the judgment of appellee's Board, being in its nature semijudicial, is not subject to collateral attack. It is well settled in states where the question has arisen, that boards of adjustment, when functioning within their jurisdiction pursuant to statutes, comparable to Arts. 1011a-1011j, Vernon's Ann.Civ.St., act as quasijudicial bodies. (Citing authorities). While our own courts have not ruled upon the status of such a municipal board, the judgments of similar bodies, or officers, have been held quasijudicial and immune to collateral attack; Druesdow v. Baker, Tex.Com.App., 229 S.W. 493; Simkins v. City of Corsicana, Tex.Civ.App., 86 S.W.2d 792 (tax boards); Texas Steel Co. v. Fort Worth & D. C. R. Co., 120 Tex. 597, 40 S.W.2d 78 (Railroad Commission); Glenn v. Dallas County Bois d'Arc Island Levee District, 114 Tex. 325, 268 S.W. 452 (appraisement board); Freeman on Judgments, 5th Ed., Vol. 1, p. 855. Appellant not having pursued his statutory remedy, the Board order in question became final and the court did not err in excluding testimony in support of the reasserted claim."

We think there is no merit in appellant's contention that because the building was constructed, designed and suitable for the purposes for which he sought an occupancy permit, and that such was done before the annexation of the property and the zoning of the area for residential purposes, he had acquired a nonconforming use of the building such as would justify the courts in interceding in the quasijudicial function of the City authorities to compel the issuance of the permit. Appellant's assignments are overruled; judgment of the court below is affirmed.

Affirmed.

LOONEY, Justice (dissenting).

In this case, I respectfully dissent from the conclusion reached by the majority. The suit is statutory in nature, brought under the provisions of Article 1011g, Vernon's Ann.Civ.St., part of the Zoning Code of the State. The facts are undisputed and, in short, are these: In June, 1941, Meserole acquired title to 16.77 acres of land adjoining but wholly without the city limits of the City of Dallas. Immediately after acquiring title, he began the erection of the building in question, and completed same before the property on which it is located was annexed to the City of Dallas, and even before the petition asking for annexation was filed. The building in question was designed and constructed by Meserole with the intention of its being used for business purposes, and particularly as a laundry and dry cleaning call or pickup station. Before beginning construction of the building (which is of stucco and plaster, set on a reinforced concrete slab floor approximately 20 x 20 ft. in size), and at various times during the progress of its erection Meserole negotiated with Mr. Wesley Gilliland, owner of the Blue Ribbon Laundry, in regard to renting or selling the structure for a laundry call station (also had similar negotiations with two other parties); and although having reached a tentative rental contract, that is, Meserole agreed that he would not rent the property to another person without giving Gilliland the refusal, litigation having arisen between Meserole and the City of Dallas, Gilliland, as he stated, shied off from the property; hence the same has remained vacant and unoccupied. Subsequent to the completion of the building, the land owned by Meserole and the surrounding area were annexed to the City of Dallas and zoned for residential purposes.

On or about April 20, 1942, being assured by Gilliland that he would rent the property for a laundry and dry cleaning office if

peaceable possession could be maintained, Meserole applied to the Building Inspector (the administrative officer of the City) for a certificate of occupancy as a laundry and dry cleaning call station. The application was denied by said officer for the reason, as endorsed by him on the application, that "the proposed occupancy is not authorized by the zoning ordinance," without adjudicating the question of nonconforming use asserted by Meserole. Within due time, however, Meserole perfected an appeal to the Board of Adjustment, based upon the contention that, under the facts, the building constituted a nonconforming use within the meaning of the zoning ordinance, and that he was entitled to a certificate of occupancy for a laundry and dry cleaning call station, the purpose for which the building was erected. Although finding the facts as heretofore stated, that is, that the building was completed before the City acquired jurisdiction over the territory, and was erected for a laundry pickup station, the occupancy permit was refused by the Board without adjudicating the question of nonconforming use, stating as the reason for their action that "after hearing all interested parties, it was moved that, in view of the relative unimportance of this building and occupancy to the owner and prospective tenant, compared with the apparent effect it will have on those who have protested, the permit is denied." In due time, Meserole properly perfected an appeal by certiorari to the district court praying that on review of the decision of the Board of Adjustment, the City of Dallas be enjoined from interfering with the use of the property as a laundry and dry cleaning call station and from any way harassing or seeking to arrest and prosecute him and his tenant in their use and occupancy of the building as a laundry and dry cleaning call station, and that on final hearing, the court order the issuance of the certificate of occupancy, and that the City be permanently enjoined from interfering therewith, etc. On trial, the court rendered judgment denying Meserole the relief sought, adjudged that he take nothing, and pay all costs incurred; from which, he perfected this appeal.

The facts being undisputed, I do not think a favorable presumption can or should be indulged as to the correctness of the decisions of either the Building Inspector (administrative officer), the Board of Adjustment, or of the court below. That the City officials and the court below based their respective decisions upon undisputed facts is apparent when we consider the findings and conclusions of the court, in connection with the uncontradicted testimony. The findings and conclusions of the trial court are these: "1. That the construction of the building involved in this controversy was begun and completed before the property on which it is located was annexed to the City of Dallas, and before the filing of the petition which led to the annexation. 2. The building was designed and constructed with the intention that it be used as a business building and in particular as a laundry call station. 3. That prior to the beginning of the construction of the building and at various times since then, Mr. Meserole had negotiated with one Wesley Gilliland the owner of the Blue Ribbon Laundry in regard to the renting or selling the building to him for a laundry call station. However, Meserole had never made any definite commitment to rent this particular building to Gilliland or anyone else as a laundry call station until the occupancy permit was applied for on April 20, 1942. 4. The building has never been occupied or used for any purpose whatever, but has remained vacant since the date of its completion. 5. The tract of land on which the building in controversy is situated and the surrounding area were annexed to the City of Dallas some time during the month of February, 1942, and zoned for residential purposes. 6. The building in question can be moved from the front of the lot on which it is located at a cost not to exceed $200.00 and with some structural change can then be made into an accessory building to a residence. Conclusions of Law. The building in question is not a lawful nonconforming use as a laundry call station as defined by the zoning ordinances of the City of Dallas, and therefore the relief sought by the plaintiff should be denied."

In the course of his testimony, Mr. Gilliland said:

"As I remember it, Mr. Meserole tried to get us to go out there and buy the lot and build a laundry call office, and we rejected that proposition. And then he came to us and said, 'I am going to put up a laundry call office out there; would you be interested in it,' and we said we might be. And I said, 'I wish before you get a tenant for it you give us the refusal on it.' (It appeared elsewhere that Meserole had discussed the matter with two other persons)

'well,' he said, 'of course I will because we have had a good many conversations in reference to the property out there from the standpoint of either buying a piece of property or having me build a location.'

"Q. Then did he build a building and give you the refusal of it? A. Yes.

"Q. And about that time this property out there began to get into litigation? A. Yes.

"Q. And you shied off of it then? A. Yes.

"Q. Did you offer here in April of this year to make a lease with Mr. Meserole of that property? A. In the early part of this year, I don't know whether it was April or in the latter part of March or in the middle of April, but I went to Mr. Meserole and said, 'Well, it looks like tires are going to get scarce and people are going to have to curtail driving and if it is possible to have peaceable possession out there it looks like a laundry call office might serve that community,' and I asked him if he was in a position to give us such possession.

"Q. And did he advise you that there was or was not, or that he would have to see about it later? A. He said that he would let us know."

This testimony stands uncontradicted. The application for a certificate of occupancy immediately followed. With the exception of the findings contained in paragraph 6 (which I submit are foreign to the issue, and immaterial), the findings of the trial court are the same as contended for by Meserole, upon which he based the contention that the building in question is a nonconforming use.

In February, 1942, the City amended its zoning ordinance, making it applicable to the land on which the building in question stands, zoning it as a "Dwelling A Area." With reference to nonconforming uses, the ordinance as originally adopted and as made applicable to the new area, provides: "1. Any use of property existing on September 11, 1929, that does not conform to the regulation prescribed in the preceding articles of this chapter shall be deemed a nonconforming use. 2. A nonconforming use may be continued subject to such regulation as to the maintenance of premises and conditions of operation as may, in the judgment of the Board of Adjustment, be reasonably required for the protection of adjacent property. 3. A nonconforming

use shall not be extended but the extension of a use to any portion of a building which portion was arranged or designed for such nonconforming use on September 11, 1929, shall not be deemed the extension of a nonconforming use."

I submit that the implication from the language of this ordinance is inescapable that the right of the owner to continue a nonconforming use is absolute, subject only to such regulation as to maintenance of premises and conditions of operation as may be prescribed by the Board of Adjustment, and that the City authorities may not deny the owner a permit of occupancy for the continuance of such use. Anticipating that in the future, the right of owners to continue nonconforming uses might be challenged by city and village authorities, as a safeguard, the Legislature provided in Art. 1011c, " * * * that this Act shall not enable cities and incorporated villages aforesaid to require the removal or destruction of property, existing at the time such city or incorporated village shall take advantage of this Act, actually and necessarily used in a public service business." It is perfectly obvious, I submit, that if Meserole is refused the certificate of occupancy sought, either the removal or destruction of the building would be inevitable.

Although the question presented is of first impression in this State, courts of other states, construing zoning laws drawn after the same pattern as our own, have held that the word "use" is not confined to the act of "using," but may comprehend property designed and suitable for a certain purpose although never actually used for the designated purpose, or despite a temporary use for another purpose. This rule was announced by the Supreme Court (N.Y.) in People ex rel. Wohl v. Leo, 109 Misc. 448, 178 N.Y.S. 851. The case of Adams v. Kalamazoo Ice & Fuel Co., 245 Mich. 261, 222 N.W. 86, 87, arose under the zoning laws of the State of Michigan. The owner had erected an ice station building and awaited the ice demand season to serve the public. The Supreme Court said the Ice & Fuel Company "occupied the premises in fact and for use in selling ice, and such was a lawful use of the premises existing at the time of the adoption of the zoning ordinance and a nonconforming use expressly excepted from its provisions. Where an occupational use of the premises is seasonal, and the means for use are installed, and the

opening of the season only awaited, there exists lawful occupational use of the same nature as periods of inactivity between seasons." In the Appeal of Haller Baking Co., 295 Pa. 257, 145 A. 77, the Supreme Court of Pennsylvania held that: "Under zoning ordinance pursuant to Zoning Act 1927, P.L. 98 (Pa.St.Supp.1928, §§ 3896b—1 to 3896b—8 [53 P.S. §§ 9183-9190]), permitting continuance of 'existing use' of property in residence district, use for which property is adapted at time of enactment of ordinance need not be in actual operation at that time, if existing circumstances connected with the property show that owner intended to use it for that purpose." (Syl. 2) And in Campbell v. Board of Adjustment, 118 N.J.L. 116, 191 A. 742, by the Supreme Court of New Jersey, owner was "held entitled to certificate of occupancy to carry on gasoline and service station which was being conducted when zoning ordinance placed property in residential zone, although property had remained idle for some of time after passage of ordinance because of inability of owner to obtain tenant." (Syl. 1) In Village of Mill Neck v. Nolan, 233 App.Div. 248, 251 N.Y.S. 533, the court held that where property was devoted to a business use before the adoption of a zoning ordinance, the owner was entitled to continue such use and to erect structures necessary thereto on obtaining necessary permits, which may not be refused him by the Village authorities.

Obviously, these decisions, construing zoning laws similar to our own, are based upon sound reason, justice, and the fundamental concept that the citizen shall not be deprived of his property except by the due course of the law of the land. I think that doctrine should rule the instant case, hence, that Meserole should be permitted to use his property as designed before the City of Dallas acquired jurisdiction over the area in which it is located.

The fact that the building in question may be used as an accessory to a residence, and that it is of relative unimportance to the owner and the prospective tenant, stated by the Board of Adjustment as reasons for refusing the certificate of occupancy, and the fact that the building can be moved and structurally changed at a cost of not exceeding $200 and used as an accessory to a residence, as found by the trial court in paragraph 6 of its findings, are each and all, in my opinion, matters entirely beside the main question, and wholly immaterial.

The majority opinion quotes liberally from two cases decided by this Court. I certainly approved the doctrine announced in these cases, but respectfully suggest that neither is in point. The case of Washington v. City of Dallas, Tex.Civ. App., 159 S.W.2d 579, simply held that the appellant having failed to pursue the statutory remedy for the review of the order of the Board of Adjustment denying his claim to a nonconforming use, the Board's action was final and could not be attacked collaterally. City of Dallas v. Meserole Bros., Tex.Civ.App., 164 S.W.2d 564, did not involve the property in question. It arose after the 16.77 acres owned by Meserole became a part of the City and after the adoption of a temporary zoning ordinance. Meserole brought an action to compel the City authorities to issue a permit authorizing the construction of commercial buildings. The property involved there did not include the property in question. A stipulation to that effect was made in that case, also was incorporated in the statement of facts in the instant case. The stipulation stated that: "This building (the one involved here) is not involved in the controversy (in City of Dallas v. Meserole Bros., Tex.Civ.App., 164 S.W.2d 564) in so far as the withholding of the building permit is concerned." Thus it appears by stipulation that the property involved here was not involved in the prior litigation between Meserole and the City, hence the language quoted in that case is not in point in the instant lawsuit.

Being of opinion that the court below erred, I think its judgment should have been reversed and judgment here rendered for Meserole, granting the relief sought.