## CITY OF DALLAS et al. v. HALBERT.
### No. 14505.

Court of Civil Appeals of Texas. Dallas.
Feb. 1, 1952.

Rehearing Denied Feb. 29, 1952.

H. P. Kucera, City Atty., and H. Louis Nichols, Asst. City Atty., both of Dallas, for appellants.

Phinney, Hallman, Reed & Holley, of Dallas, for appellee.

CRAMER, Justice.

This is a suit for injunction filed in the District Court by Guy Halbert against the City of Dallas, its Board of Adjustment, Building Inspector, City Attorney, the Corporation Court, and the County Criminal Court of Dallas County. The parties will be referred to as in the trial court. Halbert, the plaintiff, alleged that he owned certain property located in the City of Dallas and that the property had been used by him and his predecessors in title continuously since 1942 as a riding stable; that said property was annexed to the City of Dallas in June 1945. He alleged that he had a nonconforming use in connection with his operation of the riding stable continuing down to the date of the trial below. He further alleged that during the year 1950, after denying the jurisdiction of the Board of Adjustment, he attended a meeting of the Board of Adjustment of the City of Dallas, initiated by a group of residents near his riding stable, and that at such meeting the Board of Adjustment attempted to enter an order requiring him to discontinue the nonconforming use at the end of six months; that after such six-months period, the defendants either filed, or accepted for filing, a series of charges docketed in the City Court, charging the plaintiff with zoning violations, and that he has been convicted on each of said charges in the Corporation Court, but has duly appealed each case to the County Criminal Court of Dallas County, where such appeals are now pending. As a result of these charges filed against him, he could be subject to a fine ranging from $1 to $200 on each charge. He further alleged that the Board of Adjustment of the City of Dallas and the administrative officers of the City of Dallas were acting without authority in attempting to interfere with his nonconforming use and in filing charges against him for zoning violation, and in trying such charges in its Corporation Court. Plaintiff sought to restrain any further proceedings in such cases and to enjoin defendants and agents of the City of Dallas from filing or accepting other and additional charges against him for such alleged zoning violations. He also sought a judgment decreeing his right to operate the riding stable as a nonconforming use without interference by the defendants. Defendants answered by general denial; that plaintiff's property, since it was annexed to the City of Dallas, has at all times been located in an area zoned Residence–7.5; that under zone classification R–7.5, such property can be used only for single family residence purposes; a riding stable is not authorized in said area; that plaintiff's use of the property as a riding stable is in violation of its zoning ordinance. Defendants further alleged that the zoning ordinance authorized the Board of Adjustment, after a public hearing, to require the discontinuance of a nonconforming use under a plan whereby the full value of the structure could be amortized within a reasonable length of time.

Defendants further alleged that on September 25, 1950 the Board of Adjustment conducted a hearing for the purpose of determining whether or not such further use of the property for riding stable purposes should be discontinued. Plaintiff appeared at such hearing in person and by attorney and at the conclusion of such hearing the Board entered an order that the noncon-

forming use be discontinued by March 25, 1951. Although plaintiff knew and had notice of said order, he did not petition, or in any manner appeal to the District Court for a statutory review of this decision by the Board of Adjustment as provided for in Art. 1011g, V.A.C.S. Defendants also alleged plaintiff's action to be a collateral attack on such order of the Board without having first exhausted his administrative remedies. The City also filed a cross-action alleging plaintiff's property was located in an area zoned for single family dwelling purposes and that its use as a riding stable was prohibited in such zone. The City also sought in said cross-action to have further use of the property restricted to Residential–7.5 uses. No separate answer to this cross-action was filed by the plaintiff. After a hearing before the District Court without a jury, plaintiff was awarded the injunction prayed for, and the City was denied relief on its cross-action. From such judgment the City and the other defendants have duly perfected their appeal and the cause is now properly before us.

Appellants brief six points of error, in substance asserting error of the trial court in (1) holding that its zoning ordinance was void in so far as it authorized the Board of Adjustment to terminate a nonconforming use after a public hearing and after taking other steps provided for in the ordinance; (2, 3, and 4) in holding void the Board of Adjustment's order terminating plaintiff's nonconforming use because the undisputed evidence shows the Board conducted a hearing at which plaintiff appeared, and entered its order against plaintiff, and plaintiff took no appeal from such order as provided for in Art. 1011g, R.C.S.; and the undisputed evidence shows the property was, at the time of the trial below, being used in violation of such order; (5) in denying plaintiff relief on his cross-action when defendants failed to answer or deny the allegations therein, the pleading and evidence showing plaintiff's right to the relief sought; and (6) in restraining defendants from filing charges against plaintiff under its zoning ordinance and from prosecuting pending cases in the County Criminal Court because plaintiff had an adequate remedy at law; also the trial court was without jurisdiction to restrain a criminal court from proceeding with the trial of a criminal case pending in such court and within its jurisdiction. Such points were by appellee answered directly by appropriate counter points.

All points will be considered together. The facts are practically undisputed. The area in question was annexed to the City on June 15, 1945. It had been continuously used by the then owner as a riding stable since 1944; and by Halbert since he purchased it on March 25, 1946. At the time the area was annexed by the City of Dallas, the City zoned it Residential–7.5, single family dwellings, and this zoning has not since been changed. A riding stable is not permitted in such a zone; but only in a Manufacturing–1 zone. At the time Halbert acquired the property, another riding stable was located in the same neighborhood, but it was abandoned as such prior to this suit. An airport located across the street from Halbert's property has also ceased operations. At the time of the trial the entire neighborhood, with the exception of Halbert's riding stable was entirely residential,—all in compliance with the zoning ordinance.

The zoning ordinance provides for a Board of Adjustment and, among other matters, provides: "It is the declared purpose of this ordinance that nonconforming uses be eliminated and be required to conform to the regulations prescribed in the preceding articles of this ordinance, having due regard for the property rights of the persons affected when considered in light of the public welfare and the character of the area surrounding the designated nonconforming use and the conservation and preservation of property. * * *" Also, "Require the discontinuance of nonconforming uses under any plan whereby the full value of the structure can be amortized within a reasonable number of years taking into consideration the general character of the neighborhood and the necessity for all property to conform to the regulations of this ordinance."

The Board of Adjustment, on appeal from the order of the Building Inspector,

after having given all necessary notices, etc., held a hearing on September 25, 1950 for the purpose of determining whether or not Halbert's nonconforming use should be terminated. Halbert appeared at such hearing and after denying the jurisdiction of the Board, participated in the hearing. At the beginning of such hearing, in addition to the original complaint filed with the Building Inspector, an intervention and additional petition was filed in the appeal before the Board of Adjustment, signed by the original complainants before the Building Inspector, to wit, Mr. and Mrs. Osborne, plus an additional 120-odd property owners residing near the riding stable. The additional application stated: "We, the undersigned residents, as shown opposite our names attached hereto, do hereby make application to the Board of Adjustment of the City of Dallas, Texas for the following purposes and reasons: The Halbert Riding Academy is located at 2821 So. Hampton Street in the City of Dallas and is at present operating under a nonconforming use of the City of Dallas zoning code. For the past several months, Mr. Halbert has operated his academy in such a manner that it has become a public nuisance. The manner of operation has been such that it is impairing the health of the entire neighborhood area. The City Health Department has visited him many times and he has been fined in the City Corporation Court at least once and it is our understanding that he has been filed on twice. He has permitted such conditions to exist as to attract flies, vermin, and mosquitoes and has allowed his stable to cause vile odors to be distributed over the entire neighborhood. He permits his riders to ride across lawns of the neighborhood and many times returning parties have aroused the neighborhood at late hours. We feel that this public nuisance should be abated and that he should no longer be permitted to operate this academy at this location. In the alternative, we request that the time for his future operations be amortized and that a definite time be set for the discontinuance of his business, as provided for in the City Code."

The notation by the Building Inspector in connection with his hearing and the appeal from his order was as follows: "Petition by adjoining owners filed—requesting discontinuance on grounds of nuisance."

The Board of Adjustment minutes recite that the "application is for a hearing to discontinue and eliminate a nonconforming use of the Halbert Riding Academy, as the use is a nuisance, and property is not zoned for such use. Zoning ordinance does not authorize such use in an R-7.5 area."

The same minutes show the following short report of the evidence:

"Mrs. Osborne stated the use is a nuisance because of flies, filth and noise. She said hay rides go up and down Barlow and return about 11 p. m. and midnight. She can't live with the odor of the horses and manure. She said there are about 7 or 8 cases before the Health Department, some of them coming up before the County. She said there is also an outside toilet which attracts green flies. The police have been called a number of times. Mr. Dees said he and his wife are home only at night but during the past summer the odor was terrible. He had an attic fan that he couldn't use because of the odor. After hay rides, they find hay and manure in streets, also hay in parkways and yards and they have to go out and clean up. He said the manure usually stays there all day. He said he bought his home last December and intends to stay there if he can but he cannot live with that odor. He also said he didn't think it was the proper place for a riding academy on a heavily traveled street such as Hampton Road.

"Mr. Halbert said he has been there 4½ years and the previous owner was there about 2½ years. * * * He said the people knew the stable was there when they bought their homes. The place is not as bad as they say. He has one man who keeps the stalls clean and hauls manure off. He said he had it sprayed three times this summer. He said he doesn't allow any rough stuff around his place and there has never been a fight in the 4½ years he has operated there. On question, he said he owns about 1 acre, a tract 150 x 170. The

health report and the police reports were read and filed. Mr. Halbert said he keeps his place clean. On question, he also said he paid $13,500 for the property, which included the barns and fences but not the horses. He said he has filled in the low places and built it up. The Chairman said the use does not belong in a residence area and asked Mr. Halbert if he had done anything to move his business. Mr. Halbert said No, but he does have a place in view. The Chairman asked how long it would take to get a location. Mr. Halbert said he thought he could get a new location within 6 months. The Chairman suggested that during the next 6 months Mr. Halbert operate under requirements of the Health Dept., and not let the manure accumulate."

The hearing was ended by the following minute: "Mr. Zuber stated: Mr. Halbert has agreed to move within the next 6 months and I move that he be given 6 months in which to find a new location and vacate, the City Attorney to draw up the necessary papers for Mr. Halbert to sign. Seconded by Mr. Wyman and unanimously carried."

On April 29, 1950, the Building Inspector wrote Halbert, material here, as follows: "Dear Sir: This refers to the appeal made to the Board of Adjustment concerning the use of the premises known as 2821 South Hampton as a riding academy and stables. The action taken by the Board of Adjustment on September 25, 1950, allows the use as a riding academy and stables to.be continued until March 25, 1951, at which time it will be expected that the above use of the premises at 2821 South Hampton Road will have been discontinued and the above business moved to a new location where the use will comply with the requirements of the zoning ordinance. On or about March 25, 1951, another inspection will be made to determine if the action of the Board of Adjustment has been complied with."

Halbert answered such letter as follows: "Dear Sir: I have decided not to enter into any contract with the City in regard to moving my riding academy. I think that I was operating under a nonconforming use before the City annexed this property, and the best information I can obtain, tells me that the City has no authority to force me into such an agreement. I hope you understand that if I should move it would cost me several thousand dollars, and would break me from now on. I do not plan to appeal any order of the Adjustment Board because I do not think they have authority in the first place; however, I will comply with all health regulations and other ordinances of the City of Dallas, and do my best to operate the business according to the rules of the City. Sincerely yours. /s/ Guy Halbert."

The record from the District Court shows that at the hearing before the Board of Adjustment, the agreement set out in the minutes of the Board was prepared for Halbert's signature, but that Halbert refused to sign it, and that the Board of Adjustment thereafter entered of record its order at the original hearing based on the agreement made on the hearing. No appeal was prosecuted by Halbert from such order.

It was undisputed that since the order of the Board was entered, criminal charges have been filed against Halbert in the Dallas Municipal Court based on violations of the zoning ordinance and said order, and that convictions have been obtained thereon; such convictions, however, have been appealed and are now pending in the County Criminal Court of Dallas County.

■ Under the above record Halbert and his predecessors in title, at the time the property was taken into the City, had a property right in its then nonconforming use, but also shows that such nonconforming use has been lost through the subsequent proceedings before, and orders of, the Board of Adjustment and not appealed from, unless such subsequent proceedings before the Board of Adjustment were void ab initio. Washington v. City of Dallas, Tex.Civ.App., 159 S.W.2d 579 (syl. 4).

Such proceedings were not void ab initio unless the Board of Adjustment was without jurisdiction, (1) of the subject-matter, or (2) to grant the relief contained in the order.

■ Jurisdiction is the power to hear the facts involved in the particular controver-

sy; to decide the existence or nonexistence of such material facts; and to apply the law to such findings; and then render judgment or award based upon such legal conclusions from the facts. If jurisdiction existed, the Board's findings on the facts and its conclusions as to the law applicable were binding on the parties, whether the Board's findings on the facts, or its conclusions on the law, were right or wrong. If wrong, the injured party had the right of appeal. Absent appeal from the Board's order, it was final and binding on all parties before the Board. If this were not the rule, no question, either of law or fact, in any particular case would ever become finally settled.

■ The Board of Adjustment's functions are administrative, fact-finding, and quasi judicial in nature, and not subject to collateral attack. Washington v. City of Dallas, Tex.Civ.App., 159 S.W.2d 579, 580. This same authority holds directly on the material question of the Board of Adjustment's authority here in question as follows: "A claim to a nonconforming use under zoning ordinances is uniformly determinable by appeal to a Board of Adjustment from an order of the Building Inspector (or similar administrative official), and then by certiorari to the courts. (Citing authorities.) Appellant could have directly sought relief in the district court from adverse rulings of this Board of Appeals, Art. 1011g, Vernon's Ann.Civ.Sts., but this he failed to do. It would follow, we think, that the judgment of appellee's Board, being in its nature semi-judicial, is not subject to collateral attack." See 3 Southwestern Law Review 50, where, at page 68, the Washington case is discussed and approved; also Rosenthal v. City of Dallas, Tex.Civ.App., 211 S.W.2d 279, ref. n. r. e.

Appellant cites Terry v. City of Dallas, Tex.Civ.App., 175 S.W.2d 97, 100, and quotes from Justice Looney where he stated: " * * * the Board was without authority to determine the existence whether or not of a nonconforming use, * * *." It will be noted, however, that Chief Justice Bond dissented, and Justice Young's agreement was only to the disposition of the appeal, and his opinion expressly disapproved the above statement by Justice Looney. Such case is therefore not in point here.

■ Zoning is sustained under the police power, Lombardo v. City of Dallas, 124 Tex. 1, 73 S.W.2d 475, syls. 2–5, p. 478: " '* * * It is commensurate with, but does not exceed, the duty to provide for the real needs of the people in their health, safety, comfort and convenience as consistently as may be with *private property rights.*' " (Emphasis ours.) " '* * * All property is held subject to the valid exercise of the police power; * * *.' "

The police power of the City extends to the abatement of a nuisance. A livery stable or riding stable ordinarily is not a nuisance per se; however its manner of operation may make it a nuisance in fact. See Burditt v. Swenson, 17 Tex. 489, which is quoted and followed in Moore v. Coleman, Tex.Civ.App., 185 S.W. 936. See also 20 Texas Law Review 419–420 and 425. A lawful business may be so conducted in such manner as to become a nuisance. 20 Texas Law Review 410; 6 Texas Law Review 83. In a proper case, a livery stable found to be a nuisance in fact can, and should be abated. 28 Tex. Jur. 349, Title—Livery Stable Keepers.

Only if the nonconforming use is subject to abatement is a pre-existing property right lost. The question of fact as to whether the riding stable was such a nuisance as is subject to abatement, was passed upon by the Board of Adjustment, a quasi judicial tribunal, against appellee Halbert, and since the order of such Board was not void, but at most only voidable for an abuse of discretion, it was not grounds justifying an injunction enjoining the Board's final order as void ab initio.

■ Zoning violations in the City of Dallas are considered and passed upon first by the Building Inspector, with the right of review by the Board of Adjustment, a quasi judicial body; and then, if either party is dissatisfied, by certiorari to the District Court. The orders of such Board of Ad-

692

justment being quasi judicial determinations, unless appealed from, are final on the facts. 28 Tex.Jur. 349, supra.

We therefore hold that the Board of Adjustment had jurisdiction of the subject-matter before it, and that its order, not having been appealed from, is now final and binding on all parties before it, and not subject to the attack here made upon it. Such holding makes it unnecessary for us to pass on other questions raised by the parties.

The judgment of the District Court is, for the reasons stated, reversed and judgment is here rendered denying Halbert the relief prayed for by him; also awarding the City a permanent injunction restraining Halbert from the further use of the property in violation of the zoning ordinance and its R–7.5 zoning.

Reversed and rendered.