**CITY OF DALLAS et al., Appellants,**

v.

**Archie FIFLEY et al., Appellees.**

No. 16099.

Court of Civil Appeals of Texas.

Dallas.

June 1, 1962.

Rehearing Denied June 29, 1962.

H. P. Kucera, City Atty., and N. Alex Bickley, Ted P. MacMaster and Arthur Schroeder, Jr., Asst. City Attys., Dallas, for appellants.

McKool & McKool and Neil Williams, Dallas, for appellees.

WILLIAMS, Justice.

One of appellees, The Southland Corporation, brought this suit in the nature of a writ of certiorari under the provisions of Art. 1011g, Vernon's Ann.Civ.St. against the City of Dallas, the Chief Building Inspector of the City of Dallas, and the Board of Adjustment of the City of Dallas, challenging the legality of the decision of the Board of Adjustment of the City of Dallas on December 12, 1961, sustaining prior decision of the Building Inspector denying a certificate of occupancy of certain property in the City of Dallas known as 11814 HILLCREST AVENUE. It was the contention of The Southland Corporation that the property in question had previously been used as a drive-in grocery and that it had the right to continue such use as a nonconforming use under the Zoning Ordinance of the City of Dallas. Following introduction of evidence, including all testimony, both oral

and documentary, previously introduced before the Board of Adjustment, the trial court, in a non-jury trial, concluded that The Southland Corporation as lessee, and Archie Fifley, as the owner of the property, and lessor, had a nonconforming use of the premises in question and that the Board of Adjustment, the Building Inspector, and the City of Dallas, had acted arbitrarily, capriciously and unreasonably in denying a certificate of occupancy of the property. The judgment reversed the decision of the Board of Adjustment and ordered a mandatory injunction issue directing the issuance of a certificate of occupancy. From this judgment appellants appeal contending, in their first and second points of error, that the trial court erred in substituting its judgment for that of the Board of Adjustment since the record reveals that the decision of the Board of Adjustment was supported by substantial evidence, and that the trial court erred in holding that the plaintiffs had a nonconforming use for a drive-in grocery on the property in question.

The history of the subject matter of this suit, as revealed by the evidence, reaches back to 1951. The tract of land in question was unimproved and located in an undeveloped area outside the City Limits of the City of Dallas when purchased in 1951 by Archie Fifley, one of appellees herein. In 1951 Fifley entered into a lease agreement with The Southland Corporation to lease said company the north 105 feet of this tract. The lease provided that a building was to be built by the owner but that it was to be paid for by lessee. The building was constructed by Mr. Fifley and The Southland Corporation occupied it and began the operation of a drive-in grocery in the early part of 1952. This drive-in grocery was operated by The Southland Corporation until the early part of 1953 when it was discontinued because the neighborhood growth did not justify the operation of the same. According to Mr. Dodds, agent of The Southland Corporation, the store was operated a little over a year. He said: "We had anticipated a faster neighborhood

growth there than actually prevailed and I think operation ceased in the spring of the following year, which would be 1953." After the store was discontinued in 1953 it was never reopened as a grocery store, said nonuse extending over a period of approximately eight and one-half years. During this period of time The Southland Corporation did continue to pay the rental under the lease agreement. Said lease agreement contained no option to renew, and therefore, by its terms would have expired January 31, 1962. At the time The Southland Corporation ceased the operation of the drive-in grocery in 1953 it removed from the premises the mechanical equipment and furnishings, including the compressors for refrigeration and all signs advertising the property as a drive-in grocery. Certain built-in equipment, including shelving, was left in the building.

On April 26, 1954, approximately one year after The Southland Corporation had ceased operation, the City of Dallas annexed this property and immediately upon such annexation the property took a temporary classification for single family dwelling houses pending permanent zoning by the governing body of the City of Dallas. Thereafter on November 25, 1955 a permanent Zoning Ordinance was enacted by the City imposing a zone for R-One acre single family dwelling purposes, which is a residential classification. Following the annexation the building in question remained vacant and deteriorated, there being testimony that such state of deterioration was such that the glass window panes were broken, the paint was chipped and peeling, and the building was generally in a state of disrepair and nonuse.

In November 1957 The Southland Corporation permitted the Town North Y. M.C.A. to use the building free of charge as headquarters for the Y.M.C.A. activities in that section of the City. The Y.M.C.A. continued to use the property until the time of trial.

In August 1961 The Southland Corporation made application to the Building In-spector for a permit to reopen a drive-in grocery, said application being denied by the Building Inspector. Thereafter, in November 1961 appeal was taken by The Southland Corporation to the Board of Adjustment of the City of Dallas seeking permit to reopen the property as a drive-in grocery. At the completion of the hearing before the Board including the introduction of testimony by all parties who desired to be heard, the Board on December 12, 1961 voted unanimously to deny the permit.

OPINION

Art. 1011g, V.A.C.S. authorizes a Board of Adjustment, prescribes its membership and procedure, and authorizes an appeal from its decisions. As to its power, the statute provides:

"The board of adjustment shall have the following powers:

"1. To hear and decide appeals where it is alleged there is error in any order, requirement, decision, or determination made by an administrative official in the enforcement of this Act or of any ordinance adopted pursuant thereto."

The comprehensive Zoning Ordinance of the City of Dallas adopted pursuant to the authority of the Zoning Act, Art. 1011a–1011k, V.A.C.S. provides, among other things: (1) A nonconforming use is any that does not conform to the Zoning Ordinance but which was in existence prior to effective date of the Ordinance; (2) Any nonconforming use of land may be continued for definite period of time and subject to regulations as the Board of Adjustment may require for preservation of the adjoining property and the ultimate removal of the nonconforming use, it being the declared purpose of the Ordinance that nonconforming uses be eliminated and required to conform having due regard for the property rights of the persons affected; and (3) it being the declared purpose of the Ordinance that nonconforming uses be eliminated, the Board of Adjustment shall, from time to

time on its motion or upon cause presented by interested property owners, inquire into the existence, continuance or maintenance of any nonconforming use. Art. 165–24, Ordinances City of Dallas.

In considering appellants' points of error directed against the action of the trial court in reversing the decision of the Board of Adjustment and in holding that such action of the Board was arbitrary, capricious and unreasonable, we are governed by certain established legal principles:

■■■ I. Board of Adjustments when functioning within their jurisdiction pursuant to Statutes comparable to Art. 1011a–1011j, V.A.C.S. act as quasi-judicial bodies. Washington v. City of Dallas, Tex.Civ.App., 159 S.W.2d 579, and there is a presumption of legality with respect to permits, special uses, nonconforming uses and such. A party seeking relief from a decision of the Board of Adjustment relative to nonconforming uses has the burden of proof to establish illegality. Montgomery v. City of Dallas, Tex.Civ.App., 245 S.W.2d 753; McQuillin on "Municipal Corporations" 3rd Ed.Vol. 8, §§ 25.327–25.328.

■■ II. The Court in considering the legality on the part of the Board of Adjustment must not put itself in the position of the Board and substitute its findings for that of the Board even though the court concludes that the overwhelming preponderance of the evidence is against the Board's decision. City of San Angelo v. Boehme Bakery, 144 Tex. 281, 190 S.W.2d 67.

■■ III. The question is whether or not there is any substantial evidence affording reasonable support for such findings and orders entered thereunder. This is a question of law. Thomas v. Stanolind Oil & Gas Co., 145 Tex. 270, 198 S.W.2d 420; City of Dallas v. Stevens, Tex.Civ.App., 310 S.W.2d 750. *If the evidence before the court as a whole is such that reasonable minds could have reached the conclusion that the Board must have reached in order to justify its action, then the order must be*

*sustained.* Trapp v. Shell Oil Co., 145 Tex. 323, 198 S.W.2d 424, 441. (Emphasis ours)

■■ IV. Article 1011g contemplates that the trial court shall consider the Board's verified return into court along with the evidence introduced. City of San Angelo v. Boehme Bakery, 144 Tex. 281, 190 S.W.2d 67. The court may refuse to hear any further evidence if the record of the Board's proceedings returned into court supports the findings of the Board as to the existence of a nonconforming use. Rowton v. Alagood, Tex.Civ.App., 250 S.W.2d 264.

These principles of law were reiterated by Justice Thomas of this Court in the case of Huguley v. Board of Adjustment of the City of Dallas, Tex.Civ.App., 341 S.W.2d 212. In that case, Justice Thomas quoting Justice Werlein, in the case of Biddle v. Board of Adjustment, Village of Spring Valley, Tex.Civ.App., 316 S.W.2d 437, 442 said:

"Mere preparation for use of the property before adoption of a zoning ordinance is not enough to show a devotion of the property to that use. An 'existing use' should mean the utilization of the premises so that they may be known in the neighborhood as being employed for a given purpose. See Caruthers v. Board of Adjustment of City of Bunker Hill Village, Tex. Civ.App., 290 S.W.2d 340; Appeal of Haller Baking Co., 295 Pa. 257, 145 A. 77; Fairlawns Cemetery Ass'n Inc., v. Zoning Commission of Town of Bethel, 138 Conn. 434, 86 A.2d 74."

See also Meserole v. Board of Adjustment, City of Dallas, Tex.Civ.App., 172 S.W.2d 528.

■■ The general rule is for a property owner to have the benefit of a nonconforming provision of a Zoning Ordinance, the use sought to be continued must be the use in existence on the effective date of the municipal ordinance. Moreover, it is the definitely settled proposition of law that the "continuance of a nonconforming

use" existing at the time of the adoption of the Zoning Ordinance is a continuance of the same and not some other kind of use. Yokley, Zoning Law and Practice, §§ 134 and 135, pp. 259 to 261.

Bearing in mind the foregoing legal principles, we have reviewed the entire record consisting of the testimony, both oral and documentary, before the Board of Adjustment and also the same testimony, together with additional testimony introduced in the trial court, and while recognizing, as we did in Huguley v. Board of Adjustment, City of Dallas, supra, that there is strong evidence to support appellees' contention of a nonconforming use, nevertheless, we are of the opinion that the Board of Adjustment's findings and decision are sustained by substantial evidence and must be affirmed.

■ Appellees strongly urge the proposition that the evidence before the Board and the court reflect that there has been no abandonment of the nonconforming use of the property, as a matter of law. Appellees are correct in announcing the well-established rule of law which is to the effect that to constitute an abandonment of a nonconforming use there must be intention to abandon coupled with some overt act or some failure to act. Landay v. MacWilliams, 173 Md. 460, 196 A. 293, 114 A.L.R. 984; 114 A.L.R. 991; 18 A.L.R.2d 725. These principles of law were considered by this court in Town of Highland Park v. Marshall, Tex.Civ.App., 235 S.W.2d 648 and Rosenthal v. City of Dallas et al., Tex. Civ.App., 211 S.W.2d 279. However, in both of those cases no appeal from the Board was involved. In both the Marshall and Rosenthal cases the court was called upon to consider and weigh testimony in injunction cases and we were not called upon to apply the principles of law enumerated above concerning appeals from Boards of Adjustment to the District Court.

There was ample evidence introduced both before the Board and the Court in this case to demonst.ate many years of nonuse of the property in question as a drive-in grocery. There was abundance of evidence concerning removal of fixtures and permitting the property to deteriorate. True, there was testimony of appellees' intent at some indefinite time in the future to resume an operation of this property as a drive-in grocery. However, all of this testimony does nothing more than create an issue of fact which is supported by substantial evidence, both pro and con, on the issue of nonconforming use and its abandonment.

■ The fact that The Southland Corporation continued to pay its rental under the lease contract to Fifley is not conclusive on the issue of intent to resume the nonconforming use as a drive-in grocery. This act on the part of Southland was nothing more than a performance of a legal duty under its written agreement, regardless of the use of the property.

■ We cannot say in the state of this record, reviewed as a whole, that reasonable minds could not have reached the same decision as reached by the Board. The trial court obviously substituted its opinion for that of the Board in this case. We find no evidence to demonstrate arbitrary, capricious and unreasonable action on the part of the Board in rendering its decision. On the contrary, we find substantial evidence to support the decision of the Board and therefore must hold that the trial court was in error in reversing the decision of the Board.

■ There is still another reason why the decision of the Board may be affirmed. Since the action of the Board is that of a quasi-judicial body its judgments and decrees are afforded presumption of legality and should be upheld upon any possible theory of law, regardless of the reasons assigned by the Board in rendering its decision. As reflected in the City Ordinances discussed above, it is a declared policy of the City of Dallas that nonconforming uses be eliminated, having due regard for the

property rights of the persons affected, when considered in the light of the public welfare and the character of the area surrounding the designated nonconforming use and the conservation and preservation of the property. Moreover, Sec. 3, Art. 165–24 of the City Ordinance provides:

"4. Require the discontinuance of nonconforming uses under any plan whereby the full value of the structure can be amortized within a definite period of time, taking into consideration the general character of the neighborhood and the necessity for all property to conform to the regulations of this Ordinance."

■■■■ The testimony in this case reveals, without controversy, that appellee Fifley had completely recouped his investment in the property and has realized a profit from such investment over the period of years constituting the life of the lease agreement. The cost of the building and structure was $12,900. During the term of the lease the landowner received a total of $15,480 to be applied against the building cost. In addition, the owner received $12,000 to be applied as a return on his land. Thus, Fifley has received in excess of $27,000 from the property as a result of the lease agreement with Southland. In the light of these uncontroverted facts the Board would have been justified in requiring a discontinuance of any nonconforming use at the end of the leasehold period of January 1962. The testimony, especially the photographs introduced in evidence, demonstrates the increased growth of the area in question as a residential area of high quality and character. When the rights of the property owners are weighed in contrast with the public welfare and character of the area surrounding the property in question we are of the opinion that the Board would have been fully justified, in the light of the policy of the City of Dallas announced by the Ordinances, in ordering a discontinuance of the nonconforming use. Standard Oil Co. v. City of Tallahassee,

5 Cir., 183 F.2d 410, cert. denied, 340 U.S. 892, 71 S.Ct. 208, 95 L.Ed. 647; City of Los Angeles v. Gage, 127 Cal.App.2d 442, 274 P.2d 34; Spurgeon v. Board of Commissioners of Shawnee County, 181 Kan. 1008, 317 P.2d 798; City of Seattle v. Martin, 54 Wash.2d 541, 342 P.2d 602; Charles S. Rhyne, "Municipal Law" 1957, §§ 32–33, p. 922. Though not controlling in that case, the principle is discussed in City of Dallas v. Halbert, Tex.Civ.App., 246 S.W. 2d 686.

Appellants' points of error are sustained, and the judgment of the trial court is reversed and rendered, affirming the judgment and decision of the Board of Adjustment of the City of Dallas.

Reversed and rendered.

## ON MOTION FOR REHEARING

■■■■ In his motion for rehearing Appellee, Archie Fifley, contends that since he was never a party before the Board of Adjustment and was not afforded a hearing until the trial in the District Court, that the effect of our opinion is to deprive him of his property without due process of law in violation of the Texas and Federal Constitutions. There is no merit to this contention. The record reveals that prior to the hearing before the Board of Adjustment notice of such hearing was sent to the interested property owners, including appellee Archie Fifley. Fifley, while testifying in the District Court, admitted he received the notice of the hearing before the Board of Adjustment; that upon receipt of such notice he contacted Mr. Wheeler at 7-Eleven Stores, (operated by Southland Corporation) and asked him if it was necessary that he go down to the hearing; that Wheeler told him: "No, it will not be necessary for you to go"; and that such was the reason he did not appear at the hearing. It is apparent that Fifley's failure to appear before the Board of Adjustment and participate in the hearing was of his own volition and choice and he now cannot be heard to complain that he was not afforded

an opportunity to be heard. He has waived any right to make such complaint by his own actions and admissions. Moreover, Fifley's lessee, The Southland Corporation, made the application for the certificate of occupancy and also made the appeal to the Board of Adjustment upon such application being denied by the Building Inspector of the City of Dallas. Thus Fifley's failure to be made a party to such application was a matter of choice between him and his lessee and under the terms of the lease itself Fifley's rights are no greater than that of his lessee, The Southland Corporation.

The terms of the Zoning Ordinance of the City of Dallas, Art. 165–1 of Ordinance 5238 specifically provides that the act on the part of the City in regulating zoning is aimed at the use, rather than ownership, of the property. See also Village of Skokie v. Almendinger, 5 Ill.App.2d 522, 126 N.E. 2d 421 and O'Connor v. City of Moscow, 69 Idaho 37, 202 P.2d 401, 9 A.L.R.2d 1031.

We find no merit in appellee's motion for rehearing and the same is overruled.

YOUNG, J., not sitting.