Ruth Hagaman BENNERS, Independent Executrix of the Estate of Daisy Purnell Simpson, Deceased, Appellant,

v.

The CITY OF UNIVERSITY PARK and The Board of Adjustment of the City of University Park, Texas, Appellees.

No. 5072.

Court of Civil Appeals of Texas, Waco.

Feb. 3, 1972.

Rehearings Denied March 9, 1972.

Fred H. Benners, Dallas, for appellant.

Dick P. Wood, Dallas, for appellees.

HALL, Justice.

In 1925, a retail business building was constructed on parts of Lots 13 and 14, Block F, University Annex Addition, in The City of University Park, Texas. The building and its use for retail business were expressly authorized by the City by written permit. The cost of the construction was $30,000. That land and the building and their use are the subjects of this lawsuit. In 1926, the property was purchased by Cecil L. Simpson, and wife, Daisy Purnell Simpson, at a cost of $35,500.

Until 1929, the City of University Park, Texas, did not have a zoning ordinance. In that year, acting under the authority granted to it in the then newly-enacted enabling statutes [1] (Articles 1011a–1011j, Vernon's Ann.Tex.Statutes), it adopted a comprehensive zoning ordinance. This ordinance placed the property in question in a district for retail business use. Though the ordinance was amended from time to time, including a comprehensive amendment in January, 1940, the property remained zoned for retail business use until September, 1940.

On September 18, 1940, the City adopted a comprehensive amendatory zoning ordinance. In October, 1952, the City adopted another comprehensive amendatory ordinance. Both ordinances classified the subject property as being in a "C" two-family dwelling district, and permitted only single-family dwellings or duplexes to be constructed and used in such districts. Both ordinances contained this provision:

"All buildings located in the * * * 'C' Two-Family Dwelling District * * * that are used as a nonconforming use for commercial or industrial purposes at the time of the passage of this ordinance shall be removed or converted

---

1. Acts 1927, 40th Leg., p. 424, ch. 283.

and their premises thereafter devoted to uses permitted in the District in which they are located prior to the first day of January, 1965." [2]

Mr. Simpson predeceased Mrs. Simpson. Mrs. Simpson died in 1964, and the plaintiff-appellant, Mrs. Ruth Hagaman Benners, was appointed Independent Executrix of her estate.

On January 6, 1965, the City's Building Inspector ordered plaintiff to comply with the requirements of the 1952 ordinance and discontinue the business use of the property. She appealed the order to the City's Board of Adjustment, seeking a "variance or exception" to the ordinance so as to permit the continued use of the property for business purposes.

Following a public hearing, the Board of Adjustment denied plaintiff's request for relief.

In the court below, plaintiff sought to have the ordinances of September, 1940, and of October, 1952, declared invalid, and to permanently enjoin the defendant-appellee City from enforcing them, insofar as she might be required thereby to remove the building or discontinue using her property for retail business. By certiorari, she also appealed the ruling of the defendant-appellee Board of Adjustment, and asked that it be set aside.

All of the parties filed motions for summary judgment. The trial court granted the defendants' motion, and affirmed the action of the Board of Adjustment requiring the discontinuance of the nonconforming use. All relief sought by the plaintiff was denied. We reverse and render.

Among other grounds for the relief she sought, plaintiff pleaded in her last amended petition, which she incorporated by reference in her motion for summary judgment, that the enforcement of the ordinances against her property is not necessary for the health, safety, morals or general welfare of the public and "would constitute an improper and arbitrary exercise of defendant's police power, confiscating plaintiff's property * * * for the alleged benefit of the public" without just compensation, in violation of Art. I, Sec. 17, of the Constitution of Texas, Vernon's Ann.St., and that the ordinances are therefore rendered "arbitrary, unreasonable and invalid" insofar as they relate to her property. These contentions are brought forward in plaintiff's points of error numbered three, six and seven as grounds for reversal of the trial court's judgment and rendition of judgment for her.

Mrs. Benners concedes in her brief that the Board of Adjustment "is actually only an incidental party" to this lawsuit, and that the "predominant issue" in this case is "the validity of the City's zoning amendments requiring the discontinuance of the business use of appellant's building."

In their brief, the City and the Board of Adjustment state the "fundamental question presented by this appeal" to be: "Can a city, by adopting a reasonable and fair zoning ordinance, require the discontinuance of a nonconforming use after 25 years' notice thereof?"

Since its inception, a primary purpose of zoning has been to reduce nonconformance to conformance as speedily as possible with due regard to the legitimate interests of all concerned. Universally, zoning ordinances (including the two in question in this case) forbid or limit expansion of nonconforming uses and forfeit the right to such uses upon their abandonment or upon substantial damage to or destruction of the improvements housing the use. Though these legislative efforts to eliminate the nonconforming use have been approved by the courts,[3] the uses have survived.

In the search for a more direct and firmer method of dealing with the problem,

2. The 1952 ordinance added the word "business" immediately before the word "commercial" in the quoted provision.

3. See 63 Tex.Jur.2d 785, Zoning, Sec. 30; and the annotation at 18 A.L.R.2d 725 (1951).

some local legislatures now seek, as the defendant-city in this case has done, to foreclose the right to nonconforming use by giving the user a period of grace during which he is entitled to continue the use and amortize his investment. At the end of the period he is required to discontinue the nonconforming use. It has been said that this approach is the only positive method yet devised for eliminating nonconforming uses. Grant v. Mayor and City Council of Baltimore, 212 Md. 301, 129 A.2d 363, 366 (1957).

"Generally speaking, the courts have taken one of two basic views on the validity of provisions for the amortization of nonconforming uses. A large number of decisions, mostly recent, from a variety of jurisdictions, support the proposition that amortization provisions are valid if they are reasonable. In a few jurisdictions, however, the courts have taken the position that provisions for the amortization of nonconforming uses are necessarily invalid." 22 A.L.R.3d 1134, 1138 (1968).

■ The courts of Texas have indicated that provisions in zoning ordinances for amortization of nonconforming uses are valid if they are reasonable and fair in operation. See City of Corpus Christi v. Allen, 152 Tex. 137, 254 S.W.2d 759 (1953); City of Dallas v. Fifley (Tex.Civ.App., 1962, writ ref., n. r. e.), 359 S.W.2d 177; Swain v. Board of Adjustment of City of Univ. Park (Tex.Civ.App., 1968, writ ref., n. r. e.), 433 S.W.2d 727. A determination of the reasonableness of such provisions should involve the consideration of such factors as the character of the neighborhood in general, the amount an owner has invested in the property, the amount of his recoupment during the grace period, protection afforded to the public, the zoning classification and use of nearby property, availability and location of other sites, the extent to which property values are adversely affected by the nonconforming use, and the amount of loss that would be suffered by the owner upon termination of the use. 63 Tex.Jur.2d 784, Zoning, Sec. 28; Note, 44 Texas Law Review 368, 371 (1965).

■ Zoning regulations have always been subject to the test of reasonableness in Texas. Article 1011c, Vernon's Annotated Texas Statutes; Lombardo v. City of Dallas, 124 Tex. 1, 73 S.W.2d 475, 479 (1934). To be valid, a zoning ordinance must bear a substantial relation to the promotion of the public health, safety, morals, or general welfare, 63 Tex.Jur.2d 766, Zoning, Sec. 22; and it must be reasonable not only with respect to its general plan or methods of classification and districting but also in its operation with respect to each particular piece of property involved, since the regulation may be valid with regard to some properties but unreasonable, arbitrary, oppressive or confiscatory with regard to others. Each case must be decided on its own facts. 63 T.J.2d 772–774, Zoning, Sec. 24. Whether a zoning regulation is reasonable or arbitrary is a question of law. City of West University Place v. Ellis, 134 Tex. 222, 134 S.W.2d 1038, 1040 (1940).

■ Because it is an exercise of municipal legislative power, any zoning ordinance, original or amendatory, is presumed to be valid; and the burden rests on one attacking the ordinance to affirmatively show that it is invalid. 63 Tex.Jur.2d 757, Zoning, Sec. 14.

■ At the hearing before the Board of Adjustment the parties expressly waived the swearing of the witnesses. A transcription of the testimony given at that hearing subsequently became a part of the record in the trial court; and the judgment shows that it was considered by the court. Because it was unsworn, plaintiff contends that the testimony was improperly considered by the trial court. We disagree. Plaintiff alleged in her motion for summary judgment that it is "based upon the vital pleadings, all affidavits on file herein, and the record in the case, includ-

ing the Board of Adjustment certiorari record and exhibits thereto * * * all of which is incorporated in this motion by reference *for all purposes."* Plaintiff may not now contend that the trial court erroneously considered the evidence adduced at the proceeding before the Board of Adjustment as part of the summary judgment record.

The record shows without dispute that the property in question is used for an automotive garage, a grocery store, a dance studio, and a clothing alteration shop; that it is presently surrounded by duplexes and single-family dwellings; and that from the time of the enactment of the amortization ordinance in 1940 until January 1, 1965, the net income from the property was over $80,000.

Plaintiff adduced proof by affidavits that the community and neighborhood surrounding her property, essentially as it presently exists, developed after her commercial structure was erected on the lots and prior to 1940; that the building was one of the first improvements of any character constructed in the general area in which it is located; and that the retail business use of her property had a substantial influence on the residential development around it. Her proof supports a determination that the uses made of her property and the neighborhood surrounding it were developed in accordance with the uses permitted by the ordinance of 1929; that there have been no changes in the neighborhood or in the community that would require or justify the discontinuance of the nonconforming use of the property and the removal of the building; that the use made of the property, especially the grocery store, is beneficial to the neighbor-

hood; that plaintiff's building "is basically sound but is in need of some repairs" and "its appearance could be enhanced with no major alterations."

Plaintiff's pleadings and proof show, without dispute, that as business property the lots and building have a present value of $75,000 to $104,000; that the property is producing a gross revenue of $625 per month; and that if the lots were cleared of improvements they would have a value of $12,000 to $14,000.

There is no contention that plaintiff's property is a nuisance.

■ Without detailing all of the evidence, we are of the opinion that the record shows that any protection offered the public by the elimination of the nonconforming use would be uncertain or at least inconsiderable when compared to the loss that would be borne by plaintiff. Under the circumstances, enforcement of the zoning regulation in question against plaintiff's property would render the ordinances oppressive and confiscatory; would be an unreasonable exercise of the city's police power, City of West University Place v. Ellis, supra; and would therefore constitute a taking of plaintiff's property without just compensation in violation of Art. I, Sec. 17, Texas Constitution. City of Corpus Christi v. Allen, supra.

The judgment is reversed. We render judgment declaring the zoning provision in question to be invalid insofar as it relates to plaintiff's property, and permanently enjoining the City from enforcing said provision against the plaintiff and her property.

Reversed and rendered.