CITY OF FARMERS BRANCH et al.,
Appellants,

v.

HAWNCO, INC., Appellee.

No. 17176.

Court of Civil Appeals of Texas.
Dallas.
Nov. 29, 1968.

Rehearing Denied Dec. 20, 1968.

H. Louis Nichols, of Saner, Jack, Sallinger & Nichols, Dallas, for appellants.

John L. Hauer, of Akin, Gump, Strauss, Hauer & Feld, Dallas, for appellee.

**290**

DIXON, Chief Justice.

The City of Farmers Branch, Texas, has appealed from a temporary injunction restraining the City, its mayor and the five members of the City Council and the five members of its City Plan Commission from "holding any hearing for the purpose of rezoning the property in question to Residential, or from in any manner rezoning the 13.561 acres in question * * *."

In three points of error the appellants assert in substance that the trial court is without jurisdiction to enjoin the City Council and City Plan Commission from holding public hearings for the purpose of considering changes in zoning because the action by the court interferes with the legislative processes of the City duly delegated to it by the laws and Constitution of the State of Texas; and because there is no evidence to support the action. We agree with appellants.

In the early 1950's W. R. Hawn purchased approximately 1,000 acres of land lying near but outside the limits of the City of Farmers Branch. The property was thereafter annexed to the City. The land is now owned by Hawnco, Inc., of which W. R. Hawn is President and majority stock holder. The present controversy involves only a portion of the acreage.

In 1958 a master plan for the whole tract of 1,000 acres was approved by the City Council, providing for various areas including business, apartment and residential districts.

In 1963 the existing zoning ordinance was amended so that the 13½-acre tract here in controversy was changed from a commercial and business district into an apartment district.

■ Appellee claims that the City is bound by contract not to amend the 1963 ordinance in such manner as to change the property in question from apartment to residential zoning. We find no evidence of such a contract.

W. R. Hawn attended the meeting at which the 1963 ordinance was passed. We quote excerpts from his testimony as to what transpired at the meeting:

"Q Did you understand that that decision could not be made to be changed at some future date by some other City Council?

A We didn't even think about that.

Q So, your actions didn't depend upon whether they could or could not make the change in the future, you didn't think about it?

A I mean, this wasn't considered at all, this was never brought up."

\* \* \* \* \* \*

"Q So that then, at least, as far as back (sic) as 1963, you knew that your plan was subject to being changed by the City Council?

A I, again, never considered the possibility."

\* \* \* \* \* \*

"Q All right, but you knew that they had changed it once and they had the power to try to do it again?

A I never considered the legal possibilities, I thought we had an agreement.

Q Well, now, exactly what was this agreement that you keep referring to?

A The agreement was that it was rezoned to apartments.

Q And where was this agreement entered into?

A Right there in the Minutes, it was an official action of the City Council."

\* \* \* \* \* \*

"Q And could never be rezoned again?

A  It doesn't say that in here.

Q  And you didn't discuss it, did you?

A  No, we didn't discuss it."

\*    \*    \*    \*    \*    \*

"Q  There was no agreement between you and the City of Farmers Branch that they would not consider the rezoning of some of your property at some future date, you didn't even discuss it, did you?

A  No, certainly we didn't discuss it.

Q  And there was no agreement at that time?

A  I say there was an agreement.

Q  And you're relying on the language in Plaintiff's Exhibit No. 9 as your agreement with the City of Farmers Branch that they would never again reconsider the rezoning of your property?

A  I certainly am, I have been all along."

The language of Exhibit No. 9 does not constitute an agreement that the City would never in the future rezone the property.

■ But if such a contract had been entered into it would not have been valid. Our Supreme Court has held that the passage of a zoning ordinance or amendments thereto is the exercise of a legislative power. City of Bellaire v. Lamkin et ux., 159 Tex. 141, 317 S.W.2d 43, 45 (1958); City of Waxahachie v. Watkins, 154 Tex. 206, 275 S.W.2d 477 (1955). A city may not by contract or otherwise barter or surrender its governmental or legislative functions or its police power. City of Crosbyton v. Texas-New Mexico Utilities Co., 157 S.W.2d 418 (Tex.Civ.App., Amarillo 1941, writ ref'd w. m.); Fink v. City of Clarendon, 282 S.W. 912 (Tex.Civ.App., Amarillo 1926, no writ). Bowers v. City of Taylor, 16 S.W.2d 520 (Tex.Com.App.1929), 24 S.W.2d 816 (on rehearing). See also 63 Tex.Jur. 2d 756, 791; 39 Tex.Jur.2d 646.

The City of Farmers Branch is a home rule city. It has adopted a Comprehensive Zoning Ordinance pursuant to Articles 1175 (26) and 1011a to 1011j, inclusive, Vernon's Ann.Civ.St. The ordinance provides for a City Planning and Zoning Commission, authorized by statute to hold hearings and make recommendations to the City Council, including changes in zoning ordinances. Art. 1011f, V.A.C.S.

The City Council is authorized by statute to change zoning laws, but must first hold a public hearing. Articles 1011d and 1011e, V.A.C.S.

■ It is true that a city ordinance is subject to review by the courts if it is alleged and proved *after* the passing of the ordinance that the City Council acted capriciously, arbitrarily and unreasonably in passing it. But the flaw in appellee's case here is that the City has not passed an ordinance changing the zoning of the 13 acres from apartment to residential zoning. Here the trial court has attempted to restrain the City Planning and Zoning Commission from exercising its legislative function of holding public hearings in regard to the advisability of a change. It is as if a court undertook to enjoin committees of the Legislature or of the Congress from holding committee meetings and hearings in regard to proposed legislation. The courts have no such authority or power.

The cases and legal opinions cited and quoted by appellee involved situations where ordinances or enactments were successfully attacked in the courts *after* they had been passed and enforcement was either threatened or actually undertaken.

■ Appellee assumes that the Zoning Commission after holding the hearings required by statute would recommend the change and that the City Council after holding hearings will pass an amendatory ordinance. Appellee's position is that the mayor and two councilmen elected in the City election held in the spring of 1968 ran on a political platform opposing the construction of more apartments. These pre-election campaign statements and prom-

ises, according to appellee, disqualify the members of the Council from participating in future official actions of the Council in passing or refusing to pass an amendatory ordinance.

■ We do not agree. Campaign promises made in political races do not disqualify the successful candidates from exercising the duties of their offices after the election. To so hold would mean that very few successful candidates for political office would be able to qualify for their office or to perform their official duties. Under our theory of government the voters desire and even demand to be informed as to how candidates stand on the issues of the campaign. Public officials are often criticized for breaking campaign promises, but as the trial court in this case remarked, "we would be a very peculiar society, if we couldn't turn ourselves around when we see we have made a mistake, * *." In any event public officials are not legally required to keep their campaign promises and whether they do or do not they are answerable to the voters at the next election, not to a particular private property owner. Property owners do not have a vested right to the use or disposal of their property so as to deny the City the exercise of its police power.

■ Mr. Hawn says that he discussed his zoning problems with various members of the City Council who gave him assurances in regard to continuing the apartment zoning. Mr. Airoldi, who was mayor of Farmers Branch in 1963, was one of the officials with whom he talked. Such statements by individual members of a council or board are not binding on a governmental body which may act only in its official capacity. Driggs v. City of Denison, 420 S.W.2d 446, 449 (Tex.Civ.App., Dallas 1967); Maples v. Henderson County, 259 S.W.2d 264, 268 (Tex.Civ.App., Dallas 1953, writ ref'd n. r. e.).

Some time ago appellants in a motion asked the Supreme Court of Texas for leave to file an application for a writ of mandamus directing the trial judge in this case to dissolve the temporary injunction issued by him. On May 31, 1968 the Supreme Court overruled appellants' motion. The order of the Supreme Court was as follows: "Relators' motion for leave to file petition for writ of mandamus, filed herein this day, having been duly considered, it is ordered that said motion be and hereby is, overruled."

■ Appellee contends that by its order the Supreme Court adjudicated the issues raised in this appeal. It will be observed that the Supreme Court in its order does not give the reason or reasons for its action in overruling appellants' motion for leave to file their application. However, we do know that the Supreme Court has heretofore taken the position that a writ of mandamus will not be granted when the applicant has an adequate remedy by appeal. Ben C. Jones & Co. v. Wheeler, 121 Tex. 128, 45 S.W.2d 957 (1932); Harrell v. Thompson, 140 Tex. 1, 165 S.W.2d 81 (1942). An order granting a temporary injunction, though interlocutory, is appealable. Art. 2251, V.A.C.S.; Rule 385(d), Texas Rules of Civil Procedure. We think appellants have an adequate remedy by perfecting this appeal. We do not believe that the Supreme Court by its order intended to adjudicate the merits of this controversy.

■ Ordinarily a trial court is allowed considerable discretion in the matter of granting a temporary injunction. And the general rule is that its order will not be reversed on appeal except on a showing of abuse of discretion. However, that discretion does not extend to the erroneous application of law to conceded facts. Southland Life Ins. Co. v. Egan, 126 Tex. 160, 86 S.W.2d 722 (1935); City of Waco v. Marstaller, 271 S.W.2d 722 (Tex.Civ.App., Waco 1954, no writ); Bramlet & Co. v. Hunt, 371 S.W.2d 787 (Tex.Civ.App., Dallas 1963, writ ref'd n. r. e.); Traweek v. Shields, 380 S.W.2d 131 (Tex.Civ.App., Tyler 1964, no writ).

Appellants' three points of error are sustained. The judgment of the trial court is reversed and judgment is here rendered dissolving the temporary injunction and denying appellee a temporary injunction.

Reversed and rendered.