**CITY OF PHARR, Appellant,**

v.

**Arnulfo PENA, Appellee.**

**No. 13–91–356–CV.**

Court of Appeals of Texas, Corpus Christi.

Feb. 25, 1993.

Rehearing Overruled May 6, 1993.

Donald W. Allee, McAllen, Alejandro Moreno, Jr., Edinburg, for appellant.

George P. Powell, Hinojosa & Powell, McAllen, James A. Herrmann, Harlingen, for appellee.

Before SEERDEN, KENNEDY and GILBERTO HINOJOSA, JJ.

OPINION

SEERDEN, Justice.

This is an inverse condemnation case. Arnulfo Pena sued the City of Pharr for taking his property by preventing him from operating a junkyard thereon. The trial court agreed that the City had taken Pena's land and based on the jury's verdict ordered that Pena recover from the City $272,500 in actual damages, and $112,500 in exemplary damages. The City of Pharr brings eleven points of error. We reverse and render.

The evidence viewed in the light most favorable to the verdict shows that in 1979 Pena and a partner purchased a 44–acre tract of land along U.S. Highway 281 outside the city limits of Pharr, but within the City's extraterritorial jurisdiction. Pena and his partner planned to start a junkyard and used car business on the property. In accordance with these plans, they subdivided the 44 acres into separate tracts between themselves and two other purchasers, all of whom planned to set up junkyards.

In January or February of 1980, Pena started to prepare his separate tract for opening a junkyard business by clearing the land, putting down a caliche surface, and putting 20 or 30 cars on his tract. However, on February 22, 1980, the City filed suit against Pena and the other owners for wrongfully subdividing the 44–acre tract without the City's approval, in violation of city ordinances which were applicable to land within the City's extraterritorial jurisdiction.

On March 12, 1980, the City had its action against Pena and the other owners dismissed. The City's Planning and Zoning Commission had discussed annexation of the property as a condition for allowing the owners to develop their junkyards and represented that the City would provide the owners with the necessary permits and zoning.

The owners then submitted a subdivision plat and requested annexation into the City of Pharr. The City Commission approved the subdivision plat on May 6, 1980. Pena then continued preparations for opening his junkyard business. He erected a fence, put a mobile home on the property to use as an office, put in a septic tank, and installed a concrete foundation for his mechanic shop.

On some unspecified date shortly after the subdivision plat had been approved, the City annexed a 660–foot wide strip of Pena's property abutting U.S. Highway 281 and zoned it residential, which did not allow the operation of a junkyard or a used car lot. Although the back portion of Pena's tract remained outside the city limits, the front portion annexed by the city was much better suited to business operations because of its proximity to the highway.

On September 16, 1980, Pena applied to the City for rezoning from residential to industrial in order to allow operation of his junkyard. However, after a December 16, 1980, hearing, the City Commission denied Pena's application for rezoning. This denial of rezoning is the basis for Pena's claim that the City took his land.

By its first point of error, the City contends that as a matter of law it did not take Pena's property. Pena claims that the City's failure to rezone his property industrial in order to allow him to operate a junkyard amounted to a taking of his property without just compensation. He argues that the continued residential zoning classification of his property did not constitute a reasonable exercise of the City's police power, was contrary to an agreement by the City to allow him to operate his junkyard, and interfered with his entitlement to continue his junkyard business as a nonconforming preexisting use.

### A. "Takings" Generally.

Tex. Const. art. I, § 17 provides in pertinent part that "[n]o person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person." A wrongful taking of property by a governmental entity without compensation to the owner in violation of Tex. Const. art. I, § 17, is generally referred to as inverse condemnation, and in

order to recover under a theory of inverse condemnation, the property owner must establish that the governmental entity intentionally performed certain acts that resulted in a taking of his property for public use. *Woodson Lumber Co. v. City of College Station*, 752 S.W.2d 744, 746–47 (Tex.App.—Houston [1st Dist.] 1988, no writ).

A "taking" requires either actual physical appropriation or invasion of the property, or unreasonable interference with the land owner's right to use and enjoy his property. *DuPuy v. City of Waco*, 396 S.W.2d 103, 108–09 (Tex.1965); *Allen v. City of Texas City*, 775 S.W.2d 863, 865 (Tex.App.—Houston [1st Dist.] 1989, writ denied). Specifically, governmental restrictions on the use of property can be so burdensome as to constitute a compensable taking. *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415, 43 S.Ct. 158, 160, 67 L.Ed. 322 (1922); *San Antonio River Authority v. Garrett Brothers*, 528 S.W.2d 266, 273 (Tex.Civ.App.—San Antonio 1975, writ ref'd n.r.e.).

B. Valid Exercise of the Police Power.

However, all property is held subject to the valid exercise of the police power, and a city is not required to make compensation for losses occasioned by the proper and reasonable exercise of its police power. In order for a city ordinance to be a valid exercise of police power, rather than a taking, it must be: (1) adopted to accomplish a legitimate goal and substantially related to public health, safety or general welfare; and (2) reasonable and not arbitrary. *City of College Station v. Turtle Rock Corp.*, 680 S.W.2d 802, 804–05 (Tex.1984).

Nevertheless, whether a particular ordinance is a proper exercise of the police power or constitutes a compensable taking is a question of law for the court, and the ordinance is presumed to be a valid exercise of the police power absent a contrary showing by the plaintiff on the basis of which reasonable minds could not differ. *Turtle Rock Corp.*, 680 S.W.2d at 804–05; *DuPuy*, 396 S.W.2d at 110; *Estate of Scott v. Victoria County*, 778 S.W.2d 585, 590 (Tex.App.—Corpus Christi 1989, no writ).[1] In making this determination, the trial court must consider all of the circumstances to determine the reasonableness of the regulation, and a careful analysis of the facts is necessary in each case of this kind. *Turtle Rock Corp.*, 680 S.W.2d at 804; *Estate of Scott*, 778 S.W.2d at 591. The mere fact that a regulation may prevent the most profitable use of property does not conclusively establish that there has been a taking. *Estate of Scott*, 778 S.W.2d at 590.

C. City Zoning.

Specifically, cities may establish zoning districts under the police power to safeguard the health, comfort and general welfare of their citizens, so long as zoning ordinances constitute a reasonable exercise of that power. *City of Corpus Christi v. Allen*, 152 Tex. 137, 254 S.W.2d 759, 761 (1953); *Lombardo v. City of Dallas*, 124 Tex. 1, 73 S.W.2d 475 (1934); *Woodson Lumber Co. v. City of College Station*, 752 S.W.2d 744, 748 (Tex.App.—Houston [1st Dist.] 1988, no writ). This reasonableness requirement is expressed in the statute authorizing municipalities to adopt zoning regulations "with reasonable consideration, among other things, for the character of each district and its peculiar suitability for particular uses, with a view of conserving the value of buildings and encouraging the most appropriate use of land in the municipality." Tex.Local Gov't Code Ann. § 211.-005(b) (Vernon 1988)[2]; *see also Allen*, 254 S.W.2d at 761.

In the present case, it was Pena's burden to show that the City's failure to rezone his property from residential to industrial was not a valid exercise of the City's police

---

1. *See also City of San Antonio v. Guidry*, 801 S.W.2d 142 (Tex.App.—San Antonio 1990, no writ). As the San Antonio Court of Appeals has reasoned, if the law were otherwise, juries could second-guess and compensate every land use decision made by the community's lawfully elected representatives. *Id.* at 145.

2. Formerly Tex.Rev.Civ.Stat.Ann. art. 1011c (repealed).

power. However, all that Pena showed was that the City as well as neighboring landowners were concerned about the appearance of this strip of land along the highway near the site of a planned international bridge to Mexico.

 Cris Vela, community development director for the City of Pharr, testified that the City annexed this strip of land along U.S. Highway 281 in connection with its international bridge project across the Rio Grande to Mexico. Vela explained that the City wanted the corridors along the sides of the highway under its jurisdiction in order to control the aesthetics as well as the land use in conjunction with the bridge project. In addition, at the hearing on Pena's application for rezoning, several neighboring landowners voiced opposition to giving Pena a permit to set up a junkyard because it would make the City look dirty, would not look nice in that area, and would lower the value of their property.

Considerations of aesthetics as well as surrounding property values thus apparently motivated the City not to rezone the property industrial for the establishment of businesses such as Pena's junkyard. These concerns represent a legitimate goal, were substantially related to the public welfare, and provide a reasonable basis for the City's failure to rezone in accordance with Pena's desire to operate a junkyard.

### 1. Improper motivations.

Nevertheless, Pena cites the cases of *City of Austin v. Teague*, 570 S.W.2d 389 (Tex.1978) and *San Antonio River Authority v. Garrett Brothers*, 528 S.W.2d 266, 273–74 (Tex.Civ.App.—San Antonio 1975, writ ref'd n.r.e.) to show that the City's concern about preserving the appearance of this strip of land was an improper reason for refusing to rezone it industrial. In *Teague*, the City of Austin in effect acquired a scenic easement on the plaintiffs' property by denying the plaintiffs a necessary permit to rechannel a creek in order to prepare the land for development. However, it was clear in *Teague* that the City of Austin denied the permit specifically to preserve the area as a scenic easement for the

benefit of the public and to prevent development of any kind. The Texas Supreme Court held that the City of Austin, by denying the permit, was liable in inverse condemnation for a taking of the property. *Id.* at 394. In the present case, the City did not prevent all development of the property or attempt to acquire a scenic easement at Pena's expense, but only refused to rezone the property for industrial uses such as Pena's junkyard.

In *Garrett Brothers*, the City of San Antonio halted installation of utility lines and refused to issue permits to install sewers within a new subdivision, because development of the area would increase the City's cost of acquiring the land for a future dam and lake project. The San Antonio Court of Appeals there found a taking where the purpose of the governmental action was the prevention of development of land that would increase the cost of a planned future acquisition of such land by government. *Id.* at 273–74. In the present case, however, Pena offered no evidence to show that the City wanted to hold down the value of the property in contemplation of future condemnation in connection with the international bridge. Thus, in the absence of any evidence upon which the trial court could conclude that the City's actions were based on an improper motive or were arbitrary or capricious, it must be concluded that the City's actions were a valid exercise of its police power and did not constitute a taking.

### 2. Invalidity of agreement concerning future zoning.

 Nevertheless, Pena further contends that the representations made to him by the City concerning his ability to obtain any necessary permit and zoning to operate the junkyard constitute an agreement by the City to allow him to establish and operate his junkyard on the property, and that the violation of that agreement amounted to a taking of his property. However, assuming that members of the City Planning and Zoning Commission, or even members of the City Commission, attempted to make such an agreement on behalf of the City, it

would have been void and of no effect on the City's later zoning decisions.

 The passage of a zoning ordinance or amendments thereto is an exercise of legislative power, and a city may not by contract or otherwise barter or surrender its governmental or legislative functions or its police power. *City of Farmers Branch v. Hawnco, Inc.*, 435 S.W.2d 288, 291 (Tex. Civ.App.—Dallas 1968, writ ref'd n.r.e.); *see also Bowers v. City of Taylor*, 16 S.W.2d 520 (Tex.Comm'n App.1929, holding approved); *Urso v. City of Dallas*, 221 S.W.2d 869, 872 (Tex.Civ.App.—Dallas 1949, writ ref'd). Specifically, statements or assurances regarding zoning made by individual members of the city council, board or commission are not binding and do not give private property owners a vested right to the use or disposal of their property so as to deny the city the exercise of its police power. *Hawnco*, 435 S.W.2d at 292 (private landowners could not enforce councilmen's campaign promises and assurances that they would not rezone).

In the present case, Pena's reliance on the City's alleged agreement that he could acquire a specific type of zoning and permits to operate his junkyard did not bind the City to later confer the specific zoning and permits. Nor does an alleged agreement of this nature support a claim of inverse condemnation based on the City's subsequent failure to honor the invalid agreement.[3]

### D. Nonconforming Preexisting Use.

Finally, Pena contends that he began use of the property as a junkyard before the City annexed it and zoned it residential. Therefore, he asserts that his preexisting nonconforming use of the property should have been allowed to continue as an exception to the residential zoning of the property.

 In *City of Corpus Christi v. Allen*, 152 Tex. 137, 254 S.W.2d 759 (1953), the Texas Supreme Court held that zoning ordinances ordinarily may not operate to remove preexisting buildings and uses not in conformity with the restrictions applicable to the district, at least where such buildings and uses are not nuisances and do not appear to be harmful in any way to public health, safety, morals, or welfare. The Court further concluded that the enforcement of such an ordinance against a preexisting nonconforming use would be an unreasonable exercise of the city's police power and would constitute an unconstitutional taking of the property. *Id.* at 761; *see also Adcock v. King*, 520 S.W.2d 418, 423 (Tex.Civ.App.—Texarkana 1975, no writ).[4] However, it is the landowner's duty to assert before the proper local official and to prove his entitlement to continue a nonconforming use of the land by showing that his business actually existed and was in lawful use on the effective date that the zoning ordinance went into effect. *See Thomas v. City of San Marcos*, 477 S.W.2d

---

**3.** We note that the recent Texas Supreme Court case of *Westgate, Ltd. v. State of Texas*, 843 S.W.2d 448, 452–53 (1992), suggests the possibility that a governmental entity's intentional or bad faith injuries to a landowner may justify a cause of action in inverse condemnation under circumstances that would not otherwise give rise to such a cause of action. In *Westgate*, the landowner sought damages flowing from an unreasonable delay between the time condemnation was first proposed and the time of the State's final acquisition of his land. However, because no theory of "bad faith" was submitted to the jury in *Westgate*, the court determined that any such claim had been waived.

Similarly, in the present case, although Pena plead fraudulent inducement and bad faith, and there was some evidence of actions by City officials which might support such claims (e.g., continued assurances that Pena would be al-

lowed to operate his junkyard if he complied with the City's conditions), neither theory was submitted to the jury. Thus, even if bad faith or fraudulent inducement may give rise to a claim for inverse condemnation under circumstances in which such a claim would not otherwise be cognizable, there was no jury finding in the present case to support such a theory.

**4.** *Cf. City of University Park v. Benners*, 485 S.W.2d 773 (Tex.1972). The *Benners* Court adopted the "amortization technique" for analyzing an ordinance which terminates a preexisting land use. Thus, municipal zoning ordinances requiring the termination of nonconforming uses under reasonable conditions, which allow time for the owner to recover his investment and to convert the property to a conforming use, are within the scope of municipal police power. *Id.* at 777–78.

322, 325 (Tex.Civ.App.—Austin 1972, no writ); *Duke v. City of Texarkana,* 468 S.W.2d 483, 484 (Tex.Civ.App.—Texarkana 1971, no writ).[5] In order to establish a preexisting non-conforming use the property owner must make certain showings.

### 1. formal preparations and request for annexation.

 Moreover, in determining the date before which the landowner must show that a preexisting use has been established which is inconsistent with the initial zoning after annexation of a tract of land into the city, the city's and the landowner's formal preparations for annexation are controlling. At the time the landowner requests annexation and the annexation ordinance is passed on first reading, but before the property is formally annexed on passage of the ordinance after the third reading, jurisdiction of the city attaches to the property to hold the area in status quo, pending final determination of annexation and zoning. In the interim, the landowner makes any changes of use or expenditures on his property at his peril, and such interim changes may not give rise to a claim of preexisting use. *White v. City of Dallas,* 517 S.W.2d 344, 348 (Tex.Civ.App.—Dallas 1974, no writ); *Westwood Development Co. v. City of Abilene,* 273 S.W.2d 652 (Tex.Civ.App.—Eastland 1954, writ ref'd n.r.e.); *City of Dallas v. Meserole,* 155 S.W.2d 1019, 1022–23 (Tex.Civ.App.—Dallas 1941, writ ref'd w.o.m.)

 In the present case, Pena requested annexation at the time his subdivision plat was approved in May 1980, but Pena failed to show when the annexation ordinance was approved on first reading, much less when annexation became final. Because it was Pena's burden to show that his use of the property as a junkyard preexisted the formal preparations for annexation, we cannot assume that the first reading occurred any later than the date of Pena's initial request for annexation.

 Moreover, regardless of when the first reading occurred, Pena's request for annexation was itself sufficient to put him on notice of the impending annexation and application of city zoning ordinances to his property. As with new uses initiated by the landowner after the first reading of an annexation ordinance, so after the landowner himself requests annexation he should initiate new uses of his property at his own peril and without the expectation that they will be allowed to continue as preexisting nonconforming uses. *Cf. City of Round Rock v. Smith,* 687 S.W.2d 300, 303 (Tex.1985) (consent of the owner to the conditions or regulations later claimed to constitute a "taking" deprives the owner of his right to compensation).

### 2. illegal preexisting use.

 Therefore, in order to show a preexisting nonconforming use Pena must have established his junkyard business before he requested annexation and his subdivision plat was approved in May of 1980. However, it was uncontroverted at trial that the owners' development and preparation of their separate individual tracts before approval of the subdivision plat violated City ordinances applicable to the property through the City's extraterritorial jurisdiction. An illegal preexisting use of the property at the time that the zoning ordinance is passed, even if the prior illegality is later removed, does not allow the formerly illegal use to continue as a preexisting nonconforming use. *See City of Mesquite v. Coltharp,* 685 S.W.2d 78, 82 (Tex.App.—

---

5. Generally, the courts review the status of a preexisting nonconforming use of property only after a local building inspector's determination has been appealed to the city's board of adjustment. The decision of the board of adjustment is then reviewable by certiorari to the courts to determine as a question of law whether the board abused its discretion. *See Nu–Way Emulsions, Inc. v. City of Dalworthington Gardens,* 617 S.W.2d 188 (Tex.1981); *City of San Angelo v. Boehme Bakery,* 144 Tex. 281, 190 S.W.2d 67 (Tex.1945); *Thomas,* 477 S.W.2d at 325; *Washington v. City of Dallas,* 159 S.W.2d 579 (Tex.Civ.App.—Dallas 1942, no writ). In the present case, however, we need not determine whether Pena waived his right to assert that his junkyard was a preexisting non-conforming use by failure to first appeal to the City's board of adjustment, since we hold that Pena also failed to prove before the trial court below that his junkyard was entitled to be treated as a preexisting nonconforming use.

Dallas 1984, writ ref'd n.r.e.). Thus, Pena could not have established his junkyard as a preexisting nonconforming use before the subdivision plat had been approved by the City, nor could he thereafter do so in view of his own request for annexation into the City.

### 3. mere preparation.

Even assuming that neither Pena's request for annexation nor the date on which the City passed the annexation ordinance on first reading affected Pena's ability subsequently to initiate a nonconforming use, Pena's preparations of his land in the present case fell short of the requirements for a preexisting nonconforming use.

A preexisting use must be actual, not contemplated. Mere preparation for use of property before adoption of a zoning ordinance is not enough to show a devotion of the property to that use. *City of Silsbee v. Herron*, 484 S.W.2d 154, 156 (Tex. Civ.App.—Beaumont 1972, writ ref'd n.r.e.); *Huguley v. Board of Adjustment of City of Dallas*, 341 S.W.2d 212, 218 (Tex.Civ.App.—Dallas 1960, no writ); *Caruthers v. Board of Adjustment of the City of Bunker Hill Village*, 290 S.W.2d 340, 347 (Tex.Civ.App.—Galveston 1956, no writ); *Meserole v. Board of Adjustment, City of Dallas*, 172 S.W.2d 528, 531 (Tex. Civ.App.—Dallas 1943, no writ). Perhaps the most understandable and easily applied test is that an existing use should mean the utilization of the premises so that they may be known in the neighborhood as being employed for a given purpose. *City of Silsbee*, 484 S.W.2d at 157; *Huguley*, 341 S.W.2d at 218. In *City of Silsbee*, for instance, the owner of land who wished to construct a trailer park thereon did not show a preexisting use merely because two trailers were already on the land, his own and that of his mother-in-law who did not pay rent for her space. *Id.* at 157.

In the present case, the preparations that Pena made before final annexation—clearing the land, putting down some caliche, and putting a trailer house and some junked cars on the property—amounted to no more than mere preparation for use of

the property as a junkyard. Pena himself admitted that, although he had sold a very small amount of parts, he had not opened for business at the time he applied for rezoning to industrial. Nor did he show that his junkyard business had by that time become known in the neighborhood as being employed for that purpose. Therefore, Pena failed to show that his junkyard should have been treated as a preexisting nonconforming use.

### E. Conclusion.

In conclusion, we hold that the trial court erred in finding a taking of Pena's property. We sustain appellant's first point of error. The remaining points of error are not dispositive and we do not address them. *See* Tex.R.App.P. 90(a). The judgment of the trial court is REVERSED and judgment is RENDERED that Pena take nothing against the City of Pharr.

Dissenting opinion by GILBERTO HINOJOSA, J.

GILBERTO HINOJOSA, Justice, dissenting.

The trial court found the City's regulations and burdens on the land so severe that a taking occurred. The jury found the City's actions were arbitrary and unreasonable. Yet, the majority reverses and renders. It holds that the City's actions constituted a valid exercise of "police power." I respectfully dissent because I believe the primary issue involved in this case was a question of fact, and the jury found this question in favor of the plaintiff.

The distinctions drawn in inverse condemnation cases have variously been described as: illusory, "a sophistic Miltonian Serbonian Bog," and "a crazy quilt pattern." *City of Austin v. Teague*, 570 S.W.2d 389, 391 (Tex.1978). However, the law is clear that unreasonable interferences with a landowners' right to use property are considered "takings," and are subject to an inverse condemnation action. *DuPuy v. City of Waco*, 396 S.W.2d 103, 108–09 (Tex.1965); *San Antonio River Authority v. Garrett Brothers*, 528 S.W.2d 266, 273 (Tex.Civ.App.—San Antonio 1975, writ

ref'd n.r.e.). The law also provides a recovery if a governmental authority unreasonably uses its regulatory power to burden land when its motivation is to benefit itself. *Teague,* 570 S.W.2d at 391.

I recognize that the question of whether a taking has occurred is a question of law for the court. *Woodson Lumber v. City of College Station,* 752 S.W.2d 744, 747 (Tex. App.—Houston [1st Dist.] 1988). However, if the issue is whether the governmental entity is attempting to unreasonably burden the land with the intent to benefit itself, I believe a question of fact for the jury is presented on the questions of unreasonableness and intent.[1] *Cf. Guidry,* 801 S.W.2d 142, 147 (Tex.App.—San Antonio 1990, no writ) (a question of fact is presented if a landowner sues for losses caused by unreasonable delay in construction); *Woodson,* 752 S.W.2d at 748 (a question of fact is presented if City's actions are arbitrary and capricious). Questions of intent are clearly within the province of the fact-finder. *Spoljaric v. Percival Tours, Inc.,* 708 S.W.2d 432, 434 (Tex.1986). Because the evidence supported these findings, and the jury found the City's actions unreasonable, I would affirm.[2]

I believe a taking occurred because the City unreasonably used its zoning powers to forbid the primary and intended use of the property for the City's present and future benefit. The evidence showed that the City was attempting to maintain aesthetics and to keep "options" open for future land use. The means the City used were to place one condition after another in front of Pena before it would permit him to operate the salvage yard. The somewhat unorthodox means used by the City to accomplish its goals was direct evidence of unreasonableness, and sufficient circumstantial evidence for the jury to find an improper motive. *Cf Spoljaric,* 708 S.W.2d at 435 (slight circumstantial evidence is sufficient to support a finding of fraudulent intent). Based on this evidence, I believe the jury was entitled to conclude that

the City was motivated by a desire to benefit itself by keeping a profitable business from starting on land it might later need to acquire, and a desire to stop the operation of Pena's "eyesore" business—all without paying the landowner.

Unlike the majority, I find this case indistinguishable from *Teague.* In that case, the City of Austin used its permit power to effectively stop development of property owned by Teague. The City's goal was to preserve a "scenic easement" on Teague's land. The Supreme Court of Texas held that the City's denial of permits was a burden so severe that it was a taking and therefore Teague should be compensated.

The evidence in this case showed that the City of Pharr used its regulatory powers to keep appellee from developing and operating his auto salvage yard. One motivation was to keep this alleged eyesore from operating along the main road from the City to Reynosa, Mexico. I do not find this significantly different from *Teague* where the City of Austin used its regulatory power to acquire a "scenic easement" along Interregional Highway 35. Moreover, just like in *Teague,* the burden of City's regulations fell only upon the shoulders of the landowner, while the benefit fell into the collective lap of the general public. I would hold that there was sufficient evidence to establish that this type of restriction and the manner in which it was carried out was unreasonable.

The majority distinguishes *Teague* on the grounds that the City of Austin's actions caused Teague to lose all use of the land, and in this case appellee lost only one use of the land. However, TEX. CONST. art. I § 17 provides recovery if a party's land is taken **or damaged.** *See Teague,* 570 S.W.2d at 393. The evidence showed that after the City's actions, the land's value reverted to that for pasture. The jury found that it was worth $350,000 as a salvage yard. After the City's regulation, it was worth only $65,000. The land has, in

---

1. The *Teague* Court did not reach this question because the City did not contest the issue of intent.

2. In other words, I would deem a finding that the City attempted to benefit itself. TEX.R.CIV.P. 279.

my opinion, been damaged by the City's acts.

I would affirm the trial court's judgment.